No. 22-9578

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MAGNETSAFETY.ORG, HOBBY MANUFACTURERS ASS'N,
and NATIONAL RETAIL HOBBY STORES ASS'N, INC.

*Petitioners,*

v.

CONSUMER PRODUCT SAFETY COMMISSION,

*Respondent.*

On Petition for Review of a Final Rule of
the Consumer Product Safety Commission

**Brief of Amicus Curiae Public Citizen
in Support of Respondent**

Adina H. Rosenbaum
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Public Citizen*

August 18, 2023

## CORPORATE DISCLOSURE STATEMENT

Amicus curiae Public Citizen, Inc. is a nonprofit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES .................................................... iii

GLOSSARY ...................................................................... vi

INTEREST OF AMICUS CURIAE ........................................... 1

SUMMARY OF ARGUMENT ................................................... 3

ARGUMENT ...................................................................... 4

I.    Statutory limitations on the President's power to remove
      CPSC commissioners do not violate the Constitution ..................... 4

II.   Regardless of their constitutionality, the statutory limitations
      on the removal of CPSC commissioners do not render the
      Final Rule invalid ...................................................... 15

CONCLUSION ..................................................................... 21

CERTIFICATE OF COMPLIANCE ......................................... 22

CERTIFICATE OF SERVICE ................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022),
  *pet. for cert. granted in part, judgment rev'd, and case*
  *remanded*, 143 S. Ct. 1317 (2023) .................................................. 20

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023),
  *pet. for cert. pending*, No. 22-1233
  (U.S. filed June 21, 2023) ............................................................ 19

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ..................................... 11, 13, 15, 16, 17, 18

*Community Financial Services Ass'n of America v. CFPB*,
  51 F.4th 616 (5th Cir. 2022),
  *pet. for cert. granted*, No. 22-448, 143 S. Ct. 978 (2023),
  *pet. for cert. denied*, No. 22-663, 143 S. Ct. 981 (2023).................. 19

*Company Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) ........................................................... 2

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010) ............................................... 10, 11, 12, 13, 14

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ............................................................... 5, 6, 7

*In re Smith*,
  10 F.3d 723 (10th Cir. 1993) ........................................................... 9

*Integrity Advance, LLC v. CFPB*,
  48 F.4th 1161 (10th Cir. 2022)................................................... 18, 19

*Kaufmann v. Kijakazi,*
    32 F.4th 843 (9th Cir. 2022) ......................................................... 20

*Lincoln v. BNSF Railway,*
    900 F.3d 1166 (10th Cir. 2018) ....................................................... 9

*Morrison v. Olson,*
    487 U.S. 654 (1988) ................................................................... 2, 5

*NRDC v. CPSC,*
    597 F. Supp. 2d 370 (S.D.N.Y. 2009) ............................................... 2

*SEC v. Blinder, Robinson & Co.,*
    855 F.2d 677 (10th Cir. 1988) ........................................................ 8

*Seila Law LLC v. CFPB,*
    140 S. Ct. 2183 (2020) ............................................ 2, 10, 11, 12, 13

*United States v. Brooks,*
    751 F.3d 1204 (10th Cir. 2014) ....................................................... 9

**Statutes and Rules**

15 U.S.C. § 2053(a) .......................................................................... 3, 6, 7

15 U.S.C. § 2053(b) ................................................................................. 6

15 U.S.C. § 2053(c) ................................................................................. 6

15 U.S.C. § 2056 ...................................................................................... 6

15 U.S.C. § 2058 ...................................................................................... 6

15 U.S.C. § 2064 ...................................................................................... 6

*Safety Standard for Magnets*, 87 Fed. Reg. 57756 (Sept. 21, 2022) ......... 3

**Other Authorities**

Brief for Petitioners, *Free Enterprise Fund v. Public Co.*
   *Accounting Oversight Bd.*, No. 08-861 (U.S. filed July 27,
   2009) ............................................................................... 14

## GLOSSARY

| | |
|---|---|
| CFPB | Consumer Financial Protection Bureau |
| CPSC | Consumer Product Safety Commission |
| FDIC | Federal Deposit Insurance Corporation |
| FTC | Federal Trade Commission |
| NRDC | Natural Resources Defense Council |
| SEC | Securities and Exchange Commission |

## INTEREST OF AMICUS CURIAE[1]

Amicus curiae Public Citizen is a nonprofit consumer advocacy organization with members in all 50 states. Public Citizen works before Congress, administrative agencies, and the courts for enactment and enforcement of laws protecting consumers, workers, and the public. Public Citizen has a longstanding interest in effective federal safety regulation, including regulation of automobiles, drugs, medical devices, and, as pertinent here, the consumer products subject to the authority of the Consumer Product Safety Commission (CPSC).

Public Citizen advocated for the establishment of the CPSC in 1972 and for the enactment of the Consumer Product Safety Improvement Act of 2008, which augmented the CPSC's authority and responsibilities. Public Citizen has pressed for the appointment of strong leaders to the Commission and for funding from Congress sufficient to support the CPSC's efforts to protect consumers. Public Citizen has also supported adoption of specific CPSC standards, advocated for effective

---

[1] All parties have consented to the filing of this brief. This brief was not authored in whole or in part by counsel for a party. No person or entity other than the amicus curiae or its counsel made a monetary contribution to the preparation or submission of this brief.

implementation of the statutory requirement that the CPSC maintain a public database of consumer product safety incidents, and participated in litigation seeking to ensure the CPSC's vigorous performance of its statutory duties. *See, e.g., Company Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) (intervening to unseal the record of a case in which a company sought to enjoin the CPSC from publishing a report in its online database regarding the death of an infant linked to use of the company's product); *NRDC v. CPSC*, 597 F. Supp. 2d 370 (S.D.N.Y. 2009) (appearing as co-plaintiff in litigation challenging the CPSC's failure to enforce the statutory prohibition on sales of children's products containing phthalates).

Public Citizen has also long been concerned with issues relating to separation of powers. Among its other efforts in this area, Public Citizen filed amicus briefs in the U.S. Supreme Court in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), and *Morrison v. Olson*, 487 U.S. 654 (1988), in support of statutes granting executive officers protection against removal without cause by the President.

Public Citizen's interests in consumer protection and separation of powers converge in this case, in which Petitioners contend that

restrictions on the President's power to remove CPSC commissioners violate separation-of-powers principles and require vacatur of a CPSC rule addressing the hazard associated with the ingestion of high-powered magnets, *Safety Standard for Magnets*, 87 Fed. Reg. 57756 (Sept. 21, 2022) (Final Rule). Public Citizen is filing this brief to address Petitioners' separation-of-powers argument for vacatur, which is contrary to the Supreme Court's and this Court's precedent and which, if adopted, would eviscerate CPSC safety standards, leaving the public exposed to unreasonable risks of injury and death. Public Citizen filed a brief as amicus curiae addressing similar arguments in *Leachco, Inc. v. CPSC*, No. 22-7060 (10th Cir. pending).

## SUMMARY OF ARGUMENT

The Consumer Product Safety Act allows the President to remove CPSC commissioners from office only for neglect of duty or malfeasance in office. *See* 15 U.S.C. § 2053(a). Petitioners argue that these limitations on the President's power to remove CPSC commissioners render the CPSC's structure unconstitutional. The Supreme Court has long held, however, that Congress can create multi-member expert agencies whose

members are removable only for good cause. The CPSC is precisely such an agency.

Moreover, even when limits on removal of federal officers are unconstitutional, they do not render actions taken by the officers unlawful unless those actions are causally related to the invalid removal restrictions. Here, the President did not seek to remove the CPSC's commissioners, and there is no reason to believe that, if not for the removal restrictions, he would have removed the commissioners to prevent the Final Rule from being issued. Because there is no nexus between the Final Rule and the statutory restrictions on the President's authority to remove CPSC commissioners, regardless of their constitutionality, those restrictions do not provide a basis for vacating the Final Rule.

## ARGUMENT

## I.    Statutory limitations on the President's power to remove CPSC commissioners do not violate the Constitution.

Petitioners contend that the CPSC is "unconstitutionally structured" because the President can remove its commissioners from office only for neglect of duty or malfeasance in office. Pet'rs' Br. 15. That

argument is contrary to binding precedent of both the Supreme Court and this Court.

A.    In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that separation-of-powers principles permit Congress to confer protection against at-will removal by the President on the principal officers of a multi-member commission with regulatory and adjudicatory authority—in that case, the Federal Trade Commission (FTC). The Supreme Court characterized the powers exercised by the FTC as "quasi legislative and quasi judicial," *see id*. at 629, although it has since recognized that such powers, in our tripartite form of government, are executive in nature, *see Morrison*, 487 U.S. at 689 n.28. *Humphrey's Executor* holds that "illimitable power of removal is not possessed by the President in respect of officers of the character of those" of the FTC and other similar agencies, 295 U.S. at 690—that is, "administrative bod[ies]" that are charged with performing regulatory and adjudicative functions "to carry into effect legislative policies embodied in [a] statute in accordance with the legislative standard therein prescribed," *id*. at 628, and that consist of "nonpartisan" members

"called upon to exercise the trained judgment of a body of experts," *id.* at 624.

The CPSC is precisely such an administrative body. Indeed, its structure is virtually identical to that of the FTC as described by the Supreme Court in *Humphrey's Executor*. The CPSC consists of five members, appointed by the President with the advice and consent of the Senate to staggered seven-year terms, no more than three of whom may be members of the same political party. *See* 15 U.S.C. § 2053(a), (b), & (c); *cf. Humphrey's Executor*, 295 U.S. at 620 (describing the same attributes of the FTC). Like the FTC, the CSPC is a "body of experts," *id.* at 624: Its members are "individuals who, by reason of their background and expertise in areas related to consumer products and protection of the public from risks to safety, are qualified to serve as members of the Commission." 15 U.S.C. § 2053(a). Its powers of rulemaking and adjudication, *id.* §§ 2056, 2058 & 2064, are similar in character to the "quasi legislative" and "quasi judicial" powers described in *Humphrey's Executor*. And the limits on presidential removal of CSPC commissioners—only for "neglect of duty or malfeasance in office," *id.*

§ 2053(a)—are similar to those at issue in *Humphrey's Executor*: "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 619.

**B.** Petitioners devote a significant portion of their brief to arguing that *Humphrey's Executor* was wrongly decided. *See* Pet'rs' Br. 36–53. As Petitioners themselves concede, however, "this Court does not have the power to … overrule" Supreme Court precedent. *Id*. at 38.

Petitioners also attempt to distinguish *Humphrey's Executor*. They state that *Humphrey's Executor* "assumed that the FTC brought enforcement actions only in its own, internal adjudications, not in Article III courts," and "drew a sharp contrast" between "such internal enforcement," which "was not 'executive power in the constitutional sense,'" and "FTC enforcement outside the agency, in Article III courts," which "would be 'executive power in the constitutional sense.'" *Id*. at 54 (quoting *Humphrey's Executor*, 295 U.S. at 628). According to Petitioners, the restrictions on removing CPSC commissioners are not permitted under *Humphrey's Executor* because the CPSC "exercises substantial executive power in the constitutional sense," *id.*, including the power to file suit in federal court as a means of enforcement, *see id*. at 55.

7

This Court, however, has squarely rejected the argument that the power of a multi-member independent agency "to commence a civil enforcement action in federal court" takes it outside *Humphrey's Executor*'s holding. *SEC v. Blinder, Robinson & Co.*, 855 F.2d 677, 681 (10th Cir. 1988). *Blinder, Robinson* held that "Congress can, without violating Article II, authorize an independent agency to bring civil law enforcement actions where the President's removal power [is] restricted to inefficiency, neglect of duty, or malfeasance in office." *Id*. at 682. Canvassing the statutory structure authorizing the President to appoint SEC commissioners to staggered five-year terms, to designate the agency's chairman, and to remove commissioners for cause—provisions closely mirroring those governing the CPSC—this Court in *Blinder, Robinson* concluded that "these powers give the President sufficient control over the commissioners to insure the securities laws are faithfully executed," and that "the removal restrictions do not impede the President's ability to perform his constitutional duty." *Id*. Accordingly, the Court held that "the civil enforcement power given to the SEC is constitutionally valid." *Id*. That is, the Court held that an agency whose members could only be removed by the President for cause could exercise

the power to commence a civil enforcement action in federal court—a power that Petitioners deem "executive power in the constitutional sense"—without violating the Constitution.

**C.**     Petitioners do not address or even cite *Blinder, Robinson*. But that decision is a binding precedent of this Circuit, unless and until (i) the Supreme Court issues a "superseding contrary decision," *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993), (ii) this Court reconsiders the issue en banc and overrules its precedent, *id.*, or (iii) absent formal en banc rehearing, the active members of the Court *unanimously* authorize the panel to overrule a precedential decision, *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

None of these circumstances is present here. As to the latter two, *Blinder, Robinson* has not been reconsidered en banc, and the active members of the Court have not unanimously authorized its overruling. As to the first, a superseding, contrary Supreme Court decision is one that "*contradicts* or *invalidates*" this Court's analysis. *United States v. Brooks*, 751 F.3d 1204, 1210 (10th Cir. 2014). Here, rather than undermining *Blinder, Robinson*'s holding, the Supreme Court's subsequent decisions addressing limitations on presidential authority to

9

remove executive officers support *Blinder, Robinson*'s result, both by emphasizing the continuing validity of *Humphrey's Executor* and by recognizing that *Humphrey's Executor* permits limits on the President's authority to remove officers exercising "executive" power.

To begin with, each of the Supreme Court's recent decisions on limitations on presidential removal authority explicitly states that the Court does not question *Humphrey's Executor*'s holding. In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Court recognized that its precedents establish that presidential removal authority over executive officers "is not without limit" and that *Humphrey's Executor* holds "that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Id*. at 483. The Court emphasized that it was not "reexamin[ing]" that precedent." *Id*.

In *Seila Law*, 140 S. Ct. 2183, the Supreme Court acknowledged that *Humphrey's Executor* "held that Congress could create expert agencies led by a *group* of principal officers removable by the President only for good cause." *Id*. at 2192. The Court emphasized, as it had in *Free*

*Enterprise Fund*, that it "d[id] not revisit *Humphrey's Executor* or any other precedent." *Id*. at 2206.

Similarly, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Court stated that it had not "revisit[ed] our prior decisions allowing certain limitations on the President's removal power" over the heads of multi-member independent agencies, but had only "found compelling reasons not to extend those precedents to the novel context of an independent agency led by a single Director." *Id*. at 1783 (cleaned up). *Collins* explicitly notes that it does not comment on the scope of removal authority over the principal officers of "multi-member agencies," *id*. at 1787 n.21, and it nowhere casts doubt on *Humphrey's Executor*'s holding.

Importantly for this case, the Supreme Court's recent decisions also characterize *Humphrey's Executor*'s holding as permitting limitations on the removal of heads of multi-member commissions that exercise "executive" authority as a constitutional matter. *Free Enterprise Fund* begins with an acknowledgment that *Humphrey's Executor* announces a limit on the President's authority to remove "executive officers." 561 U.S. at 483. It goes on to describe its precedents, including *Humphrey's*

*Executor*, as involving "protected tenure separat[ing] the President from an *officer exercising executive power*." *Id*. at 495 (emphasis added).

*Seila Law* similarly recognizes that *Humphrey's Executor*'s endorsement of tenure protection for multi-member, expert agencies is an "exception" to the President's otherwise "unrestricted removal power" over "those who wield *executive power* on his behalf." 140 S. Ct. at 2191–92 (emphasis added). And it explicitly recognizes that the "quasi legislative" and "quasi judicial" powers exercised by the FTC at the time of *Humphrey's Executor*—and exercised today by the CPSC and many similar agencies—are forms of executive power. *See id*. at 2198 n.2.

In holding that tenure protections for certain executive officers violate separation-of-powers principles, the Supreme Court's recent decisions have focused on features of agency structure that the CPSC does not possess. *Free Enterprise Fund* held that members of a multi-member agency exercising law enforcement authority may not be protected against removal without cause if that limited removal power is conferred on another multi-member agency whose members themselves are protected against removal by the President without cause. In those circumstances, the Supreme Court held, the double layer of removal

12

protection "transforms" the agency's otherwise permissible independence into an infringement on the President's "ability to execute the laws." 561 U.S. at 496. The Court stressed that, in addressing a board with "two layers of for-cause tenure," its "point [was] not to take issue with for-cause limitations in general; we do not do that." *Id.* at 501. The CPSC lacks double insulation from removal and possesses only the form of tenure protection with which *Free Enterprise Fund* did not take issue.

Similarly, *Seila Law* and *Collins* primarily address a structural feature the CPSC lacks: the conferral of executive power on an agency headed by a *single* principal officer not subject to unfettered presidential removal authority. The Court described that agency structure as an "innovation with no foothold in history or tradition" that "is incompatible with our constitutional structure." *Seila Law*, 140 S. Ct. at 2202; *see also Collins*, 141 S. Ct. at 1783, 1784, 1787. The Court explained in detail how this single-member structure departed from the historical practice of conferring authority on multi-member independent boards and commissions, *see Seila Law*, 140 S. Ct. at 2201, as well as from the structure considered in *Humphrey's Executor*, a "non-partisan" "body of experts" appointed by the President with "staggered terms," *id.* at 2200.

The CPSC shares the latter structural features, not the single-director structure at issue in *Seila Law* and *Collins*.

Finally, the Supreme Court's holding in *Free Enterprise Fund* is premised on the constitutional validity of conferring executive authority on the SEC, a multi-member commission whose members may not be removed by the President without cause. The petitioners in *Free Enterprise Fund*, who challenged the authority of the Public Company Accounting Oversight Board, argued that separation-of-powers principles required that the *President* have the authority to remove members of the Board "either directly or through an 'alter ego' *removable at will*." Pet'rs' Br. 25, *Free Enterprise Fund*, No. 08-861 (U.S. filed July 27, 2009) (emphasis added). The Supreme Court, however, held that the separation-of-powers flaw that it identified—two levels of removal protection—could be remedied by vesting at-will removal authority in the SEC, whose members themselves are "tenured officers" not "subject to the President's direct control." *Free Enterprise Fund*, 561 U.S. at 495. That holding, in the face of the arguments advanced by the petitioners, necessarily presupposed that the exercise of executive authority by the tenure-protected SEC was not itself unconstitutional.

14

Thus, the decision in *Free Enterprise Fund* strongly supports this Court's conclusion in *Blinder, Robinson* that the SEC may constitutionally both be subject to limitations on the President's power to remove its members and exercise executive authority. And *Blinder, Robinson*'s holding, in turn, compels the conclusion that the same is true of the CPSC.

## II. Regardless of their constitutionality, the statutory limitations on the removal of CPSC commissioners do not render the Final Rule invalid.

Although the statutory limits on the President's power to remove CPSC commissioners are constitutional, this Court does not need to address that issue in this case because, regardless of how that issue is resolved, it does not provide a basis for vacating the Final Rule. Although Petitioners argue that an agency whose heads are subject to unconstitutional removal restrictions "cannot wield any powers," Pet'rs' Br. 58, the Supreme Court disagrees. In *Collins*, 141 S. Ct. at 1787, the Supreme Court explained that actions taken by properly *appointed* federal officers are not void because of improper statutory limits on their *removal*. Unlike improperly appointed officers who "lack[] constitutional authority," *id.*, officers subject to invalid tenure protections do not

15

exercise "power that [they] did not lawfully possess," *id*. at 1788. Thus, "there is no basis for concluding that any [such officer] lacked the authority to carry out the functions of the office." *Id*. Only if the removal restriction had a causal effect on actions taken by the officer, *Collins* held, would there be any basis for granting a remedy aimed at those actions. *See id*. at 1789. The Court posited, for example, that a party might be entitled to relief if the President had tried to remove an officer but had unconstitutionally been blocked from doing so. *See id*.

Justice Thomas, concurring fully in the Court's opinion, wrote separately to underscore his agreement that officers lawfully appointed "could lawfully exercise executive power," notwithstanding an unconstitutional removal restriction, and that any remedy in such cases "should fit the injury." *Id*. at 1789 (Thomas, J., concurring). "The Government," he added, "does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract." *Id*. Any remedy against agency action, Justice Thomas emphasized, depends on a "show[ing] that the challenged Government action at issue … was, in fact, unlawful." *Id*. at 1790. Actions taken by an officer subject to an unconstitutional removal restriction are not necessarily unlawful, because such an officer,

16

if properly appointed, may validly "exercis[e] power in the first instance." *Id*. at 1793. And the resulting actions are not "automatically taint[ed]" by the "mere existence of an unconstitutional removal provision" that the President could presumably have successfully challenged at any time. *Id*.

In an opinion concurring in the judgment and joined in relevant part by Justices Breyer and Sotomayor, Justice Kagan likewise agreed that officers with unconstitutional tenure protections, "unlike those with invalid appointments, possess[] the 'authority to carry out the functions of the office.'" *Id*. at 1801 (Kagan, J., concurring in part and in the judgment) (quoting majority opinion). Accordingly, "plaintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision," because "[o]nly then is relief needed to restore the plaintiffs to the position they would have occupied in the absence of the removal problem." *Id*. (cleaned up). Moreover, "[g]ranting relief in any other case would, contrary to usual remedial principles, put the plaintiffs in a better position than if no constitutional violation had occurred." *Id*. (cleaned up).

17

Here, regardless of whether the restrictions on the removal of CPSC commissioners are constitutional, the commissioners who promulgated the Final Rule "were properly *appointed*." *Id*. at 1787 (majority opinion). Accordingly, "there is no reason to regard any of the actions taken by [them] in relation to the [Final Rule] as void." *Id*. The President did not "attempt[] to remove" the CPSC's commissioners but find himself "prevented from doing so." *Id*. at 1789. Nor did he "ma[ke] a public statement expressing displeasure with actions taken by" the commissioners and assert "that he would remove [them] if the statute did not stand in the way." *Id*. And there is no other reason to believe that the "President's inability to fire [CPSC commissioners] affected the complained-of decision." *Id*. at 1801 (Kagan, J., concurring in part and in the judgment).

Notably, although Petitioners cite *Collins* in arguing that the CPSC's structure is unconstitutional, they do not acknowledge *Collins*'s ruling as to relief or its explanation that unconstitutional removal limitations do not deprive properly appointed officers of "the authority to carry out the functions of the office." *Id*. at 1788 (majority opinion). Likewise, they do not cite *Integrity Advance, LLC*, 48 F.4th 1161, 1170

(10th Cir. 2022), in which this Court applied *Collins* in rejecting the argument that actions taken by an agency whose director was subject to unconstitutional removal restrictions must be set aside.

In short, even if the statutory restrictions on the President's authority to remove CPSC commissioners violated separation-of-powers principles, that violation would not render the CPSC's promulgation of the Final Rule unlawful absent a nexus between the action and the removal restrictions. *See id.* at 1170 (rejecting argument that an agency enforcement proceeding should be set aside based on unconstitutional restrictions on the President's authority to remove the agency's director where the subject of the enforcement proceeding did not point to any compensable harm from the removal restrictions); *see also*, *e.g.*, *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (rejecting argument that civil investigative demand for documents was void due to unconstitutional removal provision where party challenging the demand could not show that the agency would not have issued the demand but for the removal provision), *pet. for cert. on other grounds pending*, No. 22-1233 (U.S. filed June 21, 2023); *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 633 (5th Cir. 2022) (rejecting argument

that rule should be invalidated due to unconstitutional removal provision where the record did not demonstrate that, but for the provision, the President would have removed the agency's director and the agency "would have acted differently as to the rule"), *pet. for cert. granted on other grounds*, No. 22-448, 143 S. Ct. 978 (2023), *pet. for cert. denied as to relevant question*, No. 22-663, 143 S. Ct. 981 (2023); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022) (rejecting argument that agency proceeding should be invalidated based on allegedly unconstitutional removal restrictions where plaintiff did not demonstrate that the removal restrictions caused him harm), *pet. for cert. granted on other grounds, judgment rev'd, and case remanded*, 143 S. Ct. 1317 (2023); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849–50 (9th Cir. 2022) (rejecting challenge to Social Security benefits decision based on limitations on removing Commissioner of Social Security where there was no link between the claimant's case and the removal provision). There is no nexus here between the restrictions on the President's authority to remove CPSC commissioners and the CPSC's promulgation of the Final Rule, and the removal restrictions provide no basis for vacating that rule.

## CONCLUSION

The Court should deny the petition for review.

Respectfully submitted,

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Public Citizen*

August 18, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because, excluding those parts permitted to be excluded under Federal Rule of Appellate Procedure 32(f), it contains 3,859 words.

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 29(a)(4), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook.

<u>/s/ Adina H. Rosenbaum</u>
Adina H. Rosenbaum

## CERTIFICATE OF SERVICE

I hereby certify that, on August 18, 2023, I electronically filed the foregoing brief using the Court's CM/ECF system, which will send notification of such filing to counsel of record for all parties.

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum
